IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THOMAS THAGGARD,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF ALABAMA DEPARTMENT OF YOUTH SERVICES,<br><br>Defendant. | ) | CASE NO. 2:07-cv-483-ID<br><br>(WO) |

**MEMORANDUM OPINION AND ORDER**

Thomas Thaggard brings this action against the State of Alabama Department of Youth Services ("DYS") alleging discrimination on the basis of race and age, and retaliation. Thaggard claims that DYS denied his applications for promotions in 2006 and 2007 for the position of youth services specialist in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA"). This cause is before the Court on DYS's Motion for Summary Judgment (Doc # 56), filed September 15, 2008. The Court has carefully considered all submissions in support of and in opposition to the motions and the relevant case law. For the reasons set forth below, the Court finds that DYS's Motion for Summary Judgment is due to be GRANTED.

**I. JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(4) (civil rights). The parties contest neither

personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the

nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## III. FACTS[1]

---

[1] Plaintiff's brief attempts to support numerous factual assertions with citations to evidence that have not been submitted to this Court. This Court will not consider any facts that are not in evidence. *See, e.g.*, *Singh v. I.N.S.*, 213 F.3d 1050, 1054 (9th Cir. 2000)

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Thaggard is a white male born June 4, 1948. Thaggard was hired by DYS in February 1977 as a Counselor Aide II. By March 1987, Thaggard had been promoted to Counselor I. Thaggard's promotion to Counselor I in 1987 was the last promotion he has received. Throughout Thaggard's thirty-year career at DYS, he has received a number of disciplinary actions, including two suspensions, two letters of reprimand, and nine written warnings. Thaggard has been arrested twice for possession of marijuana, although the charges in both cases were dropped.

In March 2006, Thaggard filed charges of discrimination with the EEOC against DYS based upon events that are not relevant to this case. Later in 2006, a position for youth services specialist became available, which would have been a promotion from his current position as counselor I. Thaggard applied for this position, and in May 2006, Thaggard received a letter from Debra Spann, Personnel Manager for DYS, which stated that Thaggard had been certified for consideration for the position of youth services specialist. The letter also indicated that Thaggard's "rank" was "Band 1 (Tied with 5)."

Thaggard interviewed for the specialist position. Both of the DYS employees who interviewed Thaggard for the position, Tim Davis and Janice Lewis, are black. Thaggard did

---

(statements in motions are not evidence and are not entitled to evidentiary weight).

not receive the promotion; rather, DYS selected Victor Black, a black male born in 1966, for the position, effective September 1, 2006. After he was denied this promotion, Thaggard amended his pending March 2006 EEOC complaint to include the Victor Black promotion. On September 7, 2006, the EEOC issued a Right to Sue letter to Thaggard regarding this complaint.

On September 11, 2006, Thaggard filed another charge of discrimination with the EEOC, which reasserted the Victor Black promotion as discrimination. Subsequently, a second position for youth services specialist became available, which Thaggard also applied for. On February 7, 2007, Thaggard received a letter from DYS certifying him for consideration for the position. Thaggard's rank was listed as "Band 1 (Tied with 26)." Thaggard interviewed with Davis and Lewis a second time for this position. However, Thaggard did not receive this promotion because DYS promoted Arnea Linden and James White to the position effective March 6, 2007.

On May 10, 2007, Thaggard filed yet another EEOC charge of discrimination based upon this second youth services specialist position. No right to sue letter has yet been issued by the EEOC regarding this claim. Thaggard filed the instant lawsuit in this Court on June 1, 2007.

## IV. DISCUSSION

### A. Discrimination Claims

#### 1. Title VII Framework

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

A plaintiff may establish a Title VII claim through the introduction of direct evidence of discrimination, or through circumstantial evidence that creates an inference of discrimination. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1103 (11th Cir. 2001).

For a plaintiff to base a Title VII claim on circumstantial evidence of discrimination, the plaintiff must first establish a prima facie case of discrimination using the McDonnell Douglas framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Therefore, in order to establish a prima facie case of race discrimination under Title VII, the plaintiff must show that: (1) he was qualified and applied for the position; (2) he was rejected despite his qualifications; and (3) other equally or less qualified employees who are not members of his race were hired. *Bass*, 256 F.3d at 1104. Once the plaintiff has made out a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the employee's rejection. *Id.* If the employer meets this burden of production, the burden shifts back to the plaintiff to establish that each of the defendant's proffered reasons for hiring someone of a different race is pretextual. *Id.*

**2. ADEA Framework**

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

As is the case for Title VII cases, ADEA claims based upon circumstantial evidence of discrimination use the McDonnell Douglas framework. *See McDonnell Douglas*, 411 U.S. 792; *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Under that framework, the plaintiff must first establish a prima facie case of discrimination by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. *Chapman*, 229 F.3d at 1024. If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for selecting the younger individual. *Id.* If the employer does so, then the burden shifts back to the plaintiff to show that the reasons articulated by the employer are pretextual. *Id.* at 1024-25.

**3. 2006 Promotion**

Thaggard claims that DYS's decision to promote Black to the position of youth services specialist in 2006 discriminated against him on the basis of age and race. DYS has moved for summary judgment on these claims on the grounds that (1) Thaggard's claim is time barred because he filed it more than ninety days after he received his right to sue letter from the EEOC; and (2) that DYS did not discriminate when it chose not to promote

Thaggard to the position.

Under both Title VII and the ADEA, a claim is time barred if it is filed more than ninety days after the plaintiff receives a right to sue letter from the EEOC. *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII and ADEA actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge."). The EEOC issued Thaggard a right to sue letter regarding his discrimination claim for the 2006 promotion of Black on September 7, 2006. However, Thaggard did not file this lawsuit until June 1, 2007, which is more than eight months after the right to sue letter was issued.

Thaggard argues that this claim was timely filed after a second right to sue letter was issued on April 27, 2007. However, a second right to sue letter will only extend the ninety-day time limit if it was issued pursuant to a discretionary reconsideration on the merits of the prior determination. *See Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997). There is no evidence that the second right to sue letter was issued pursuant to a reconsideration of the original claim. Therefore, the ninety-day period expired well before Thaggard filed this case on June 1, 2007, and his claims regarding the 2006 Black promotion are time barred. Consequently, DYS is entitled to summary judgment with respect to these claims.

**4. 2007 Promotions**

Thaggard filed his charge of discrimination for the 2007 promotion with the EEOC

on May 10, 2007. The EEOC never issued Thaggard a right to sue letter for this claim, but DYS has waived the exhaustion of remedies defense for this claim. Because the procedural requirement of exhausting administrative remedies with the EEOC prior to filing a civil suit is not a jurisdictional requirement, it is a defense that may be waived by the defendant. *See Solomon v. Hardison*, 746 F.2d 699, 701 (11th Cir. 1984).

**a. Direct Evidence**

Thaggard argues that he has presented this Court with direct evidence of racial discrimination. Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. *Bass*, 256 F.3d at 1105. Only the most blatant remarks, whose intent could be nothing other than to discriminate, constitute direct evidence of discrimination. *Id.* Moreover, for statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision. *Id.* Remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination. *Id.*

As direct evidence of discrimination, Plaintiff submits the following statements Booker made during his deposition:

> Q: Okay. Well, with the disproportionate number of blacks versus whites in the student populations, sometimes may be approaching two-thirds, has it been beneficial to have more black staff members out here?
> . . .
> A: Has it been beneficial?
> Q: Yes.

A: It helps, yeah.
Q: It helps to have more black staff members?
A: Yeah.
Q: Okay. Now, do you find that black staff members have, generally speaking, a better ability to relate to black students in the population?
A: Generally speaking, yes.

Pl.'s Resp. to Motion for Summary Judgment (Doc. # 68), Ex. E, at 11-12. However, these statements do not constitute direct evidence of discrimination. *Compare Haynes v. W.C. Caye & Co.*, 52 F.3d 928, 930 (11th Cir. 1995) (statement that "women were simply not tough enough to do the job" and "it would require a man to do the job" was direct evidence of discrimination), *with Damon v. Fleming Supermarkets Of Fla.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (statement that "what the company needed was aggressive young men like [D' Angelo] to be promoted" was not direct evidence of discrimination).

**b. Circumstantial Evidence under McDonnell Douglass Framework**

Thaggard further argues that he has presented sufficient circumstantial evidence of discrimination to establish a prima facie case of discrimination under both Title VII and the ADEA. DYS argues that Thaggard has failed to make a prima facie case (1) under both Title VII and ADEA because he was not qualified for the position he applied for, and (2) under the ADEA because the people DYS promoted were not substantially younger than Thaggard.

**i. Prima Facie Case**

An individual is "qualified" for a position, for purposes of employment discrimination law, if he meets the criteria that the employer has specified for the position. *Wright v. Southland Corp.*, 187 F.3d 1287, 1301 n.16 (11th Cir. 1999). DYS argues that Thaggard was

not qualified for the youth services specialist position because he did not meet the criteria specified in the job announcement. The job announcement for the DYS specialist position states:

> This position requires knowledge of rehabilitation and treatment practices, individual and group behavior, and crisis intervention methods applicable to juvenile delinquents. This position also requires the ability to plan, assign, and evaluate the work of others. The ability to maintain effective working relationships and to express ideas clearly and concisely are required.

According to DYS, Thaggard did not meet these requirements. However, taking the evidence in the light most favorable to Thaggard, this Court finds that there is sufficient evidence that a reasonable trier of fact could find that DYS believed Thaggard was "qualified" for purposes of employment discrimination law. Indeed, Thaggard had thirty years of experience working at DYS when he interviewed for the specialist position. Moreover, DYS interviewed Thaggard each time he applied for the position, from which a reasonable fact finder could infer that DYS thought that he met the minimum requirements for the position. In addition, DYS has not presented this Court with any evidence that Thaggard failed to meet the criteria in the job announcement in order to be considered "unqualified," and Thaggard has met his burden to present evidence sufficient to create a genuine issue of material fact. Therefore, DYS is not entitled to summary judgment on this issue.

Furthermore, DYS argues that it is entitled to summary judgment with respect to the promotion of Linden to the specialist position because she is only 8 years younger than

Thaggard. However, an eight year age difference is sufficient to establish a prima facie case of age discrimination. *See, e.g.*, *Damon*, 196 F.3d at 1360 (five year age difference sufficient); *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997) (three year age difference sufficient). Consequently, this Court finds that Thaggard has met his burden to establish a prima facie case of discrimination under both Title VII and the ADEA.

**ii. Legitimate, Nondiscriminatory Reasons**

Since this Court has found Thaggard has established a prima facie case of discrimination, the burden shifts to DYS to provide a legitimate, nondiscriminatory reason for promoting Linden and White to the specialist position, rather than Thaggard. *Bass*, 256 F.3d at 1104.

DYS has put forward the following justifications for failing to promote Thaggard: (i) Thaggard's disciplinary history and performance problems; (ii) Thaggard's arrest record; and (iii) Thaggard did not interview as well as the candidates who were promoted.

Thaggard's disciplinary history includes, over his thirty year career at DYS, two suspensions, two letters of reprimand, and nine written warnings. Davis stated that he was aware of Thaggard's arrest for marijuana, but was not aware the charges were dismissed.

With respect to the interview, Davis felt that Thaggard's performance during the interview was insufficient. When Davis asked Thaggard what DYS's policy on the use of physical force on students was, Thaggard said he didn't know. This concerned Davis for two reasons. First, Thaggard had worked at DYS for thirty years, and he felt in that time

Thaggard should have become very familiar with that policy. Second, it was a standard interview question for the specialist position. Thaggard had been asked the very same question when he sought the position in 2006, yet he had not bothered to learn the policy. Davis also asked Thaggard if he thought he would have any trouble enforcing DYS's policies, even policies he might disagree with. Thaggard responded that he couldn't say for certain that he would always be able to enforce DYS policies under all circumstances. This answer also concerned Davis.

Furthermore, Lewis provided specific examples of problems with Thaggard's performance and character that concerned her. Lewis had provided Thaggard with specific opportunities to demonstrate the leadership skills required by the specialist position, but Thaggard turned down those opportunities. For example, Thaggard had been offered an opportunity to serve as acting youth service specialist—the very job Thaggard sought—but Thaggard turned down the opportunity. Moreover, Lewis stated that she had observed that Thaggard had "mood swings", and on one occasion, Thaggard came into her office and asked her "Have you ever thought about doing something that you know that's wrong, that you shouldn't do it?"

The Court finds that DYS has met its burden to show legitimate, nondiscriminatory reasons for failing to promote Thaggard to the specialist position. *See Bass*, 256 F.3d at 1106 (holding subjective reasons are adequate to constitute legitimate nondiscriminatory reasons so long as defendant articulates a "clear and reasonably specific factual basis upon which it

based its subjective opinion.").

#### iii. Pretext

Thaggard never adequately addresses DYS's articulated nondiscriminatory reasons for failing to promote him. Thaggard focuses primarily on comparing his alleged deficiencies with corresponding problems with Black. The problem with this approach is that Black was promoted over Thaggard in 2006—and this Court has already found that claim is time-barred. The issue being addressed is the promotion of Linden and White in 2007. Thaggard never adequately addresses how DYS's nondiscriminatory reasons are pretextual in the context of the 2007 promotion. Accordingly, this Court finds that Thaggard has failed to meet his burden to show that DYS's legitimate, nondiscriminatory reasons are pretextual. Therefore, DYS is entitled to summary judgment on Thaggard's Title VII and ADEA claims of discrimination.

### B. Retaliation Claim

To establish a claim of retaliation, a plaintiff must prove (1) that he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relation between the two events. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Once the plaintiff establishes the elements of a retaliation claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. *Id.* The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that

the reason provided by the employer is a pretext for prohibited retaliatory conduct. *Id.*

Thaggard alleges that DYS's decision to promote Black in September 2006 was retaliation for his EEOC charge of discrimination filed in March 2006. Thaggard also alleges that DYS's decision to promote Linden and White in March 2007 was retaliation for the EEOC charge of discrimination he filed in September 2006.

Each of the denied promotions occurred approximately six months after the alleged protected speech (the EEOC charges of discrimination). The Eleventh Circuit has held that shorter periods of three to four months are insufficient temporal proximity to establish a causal relationship. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (noting that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough," and "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law"). Accordingly, this Court finds that Thaggard has failed to provide sufficient evidence for a reasonable jury to find that his termination was causally related to any protected expression. Therefore, DYS is entitled to summary judgment on Thaggard's retaliation claims.

## V. CONCLUSION

For the reasons set forth above, it is CONSIDERED and ORDERED that

(1) Defendant's Motion for Summary Judgment (Doc # 56) be and the same is hereby GRANTED.

(2)    Defendant's Motion to Strike (Doc. # 73) is DENIED AS MOOT.

(3)    All claims and this case are DISMISSED WITH PREJUDICE.

(4)    The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this 16th day of October, 2008.

                                            /s/ Ira DeMent
                                  SENIOR UNITED STATES DISTRICT JUDGE